May it please the court. Good morning, your honors. My name is Marina Bogoratov. I'm representing appellants in this case, and I would like to reserve five minutes for rebuttal, please. The issue in this case is not just a short phrase, and it's not just a short phrase compiled of just six words. It is the four-part lyrical sequence in the song that goes as follows. The player's gonna play, play, play. The hater's gonna hate, hate, hate. Heartbreak is gonna break, break, break. And the faker's gonna fake, fake, fake. By comparison, the original four-part lyrical sequence in my client's song, which by the way was included in Billboard's 100 Greatest Girl Group Songs of All Time, so somebody found it creative, goes as follows. Players, they're gonna ball. Shot callers, they're gonna call. In other words, the infringing work took the first two parts of the sequence verbatim and closely mimicked the second two parts. I don't think anybody doubts in this case that the phrases seem quite similar. It's not just the phrases, it's the whole sequence. And that's what I want to ask you. Your copyright claims in this case, are they both the phrases and the sequence or only the sequence? Is it a composition and arrangement claim or is it also, you're making two claims or one? As stated in paragraph 43 of the complaint, it is the phrases and the sequence. It's the combination. Okay, so you're making two claims. With respect to the phrases, what the district court did, and I was surprised when I did some case law, was there was a request for admissions and it was admitted that 13 different phrases had appeared in public before your client's work was done. Why doesn't that establish the lack of originality? There is a good reason why we didn't oppose that judicial notice. Well, I don't think you... Sooner or later, those facts would have come in, so I understand that you acted properly not opposing it. Let me make it clear. All those phrases that came in through judicial notice dealt with player haters, haters of players. There are no, in this case, and it's very important, there are no haters of players involved. What my clients did, they took popular notions at the time, maybe commonplace notions, and they combined them in a new way to create a new message. That was the novelty of it. There are no player haters. There are players playing, haters hating, and then two other groups doing their thing. And the message is, you know, I'm not going to pay attention to what other people do, what other people think. I'm just going to stick to my own devices. And that is the novelty of it. There are unprotected elements taken together, arranged in a certain way, and that is the creative expression that we claim deserves protection. And I know we're at the motion to dismiss stage here, so it's a little, maybe premature, but assuming that those unprotected elements combined together are entitled to some protection, is it only a thin protection? Well, let me just point out, this is lyrics we're talking about. You know, when you're talking about thin protection, virtual identity, you're talking about representational objects, jeweled beads, you're talking about jellyfish lamp, you're talking about things that exist in nature and that somebody took and tried to make an art out of it. In lyrics, all you have is words and ideas. You will not find one case where thin protection exists. I just can't find it in the Ninth Circuit. You do admit that other circuits have found virtual identity to lyrics? Yes. So far, I haven't seen a case like that. It hasn't been cited in the opposing brief. I haven't seen it. And we're not at that stage yet. Sure. I'm cheating, because we have another panel, as your co-counsel knows, which this issue is in front of, so I'm trying to get all the help I can get. So, I want to separate the things for a second. Let's assume the district court didn't seem to treat your composition and arrangement claim in its dismissal order. Was I missing something or did it treat it? I don't believe it was treated as such. What the district court looked at and underscored is that it's just six words. That's what I'm looking at. That's not what the claim is. It was treated narrowly. It is much larger. And what he did is he applied numerosity, which is a test for representational objects, to lyrics. And in Shaw, this court set lyrics and representational objects to different things. Lyrics are subjective. One looks at them and has a different reaction. When you look at a real bee and a jewel bee, you can just, by looking at them, comparing them, you can see the creativity. In lyrics, it doesn't work that way. And we believe that this court... So, I want to get back for a second. Let's assume, I know you argued to the contrary, let's assume that the district judge, on the basis of the 13 admitted matters, could find that the phrase was not original. You're saying you would nonetheless have a claim for a composition and arrangement of unprotectable items, unprotected items. Let's assume the phrase, player's going to play, and the phrase, hater's going to hate, was not original, even though, as I said, those were different phrases. I said to assume it. You don't have to make... Still, combining those two phrases and continuing with the four lyrical sequence that is similar, taking the same number of syllables, choosing words that have negative connotations, you know, haters, choosing a colloquial word, haters instead of critics, choosing... No, I understand you're arguing... But let me just... My question was much narrower. I understand that's your argument. I understand we have case law that says composition and arrangement of unprotected items can give rise to protection. My question was, the district court doesn't seem to treat that in its dismissal order. And so was that... Did you make this argument that you're making today to the district court? We made the argument. I believe it was not acknowledged. The court kind of stuck with the two phrases and went with that analysis. We argued to the district court. The complaint says it's a four-part sequence, but I don't think that kind of got through. So that is also an error that we're claiming on this appeal. Is it your position that a court can never dismiss a copyright claim based on originality at the pleading stage? Look, when you're looking at a photograph, like Grant Mister case, right, you can look and compare the two photographs and you can, by looking, make an objective assessment of whether or not there are elements that are similar or not. When you're looking at a lyrical sequence, the subjectivity comes in necessarily. Yes, we do say, we do argue, that for a lyrical composition, which is at issue here, on a pleading stage, it's pretty much impossible to make an objective assessment of originality. So what if there had been a prior work with the exact same language as your client's work, in the exact same sequence? Right. That could be the stage, could it not? I think, yes, if prior work was exactly the same. So the answer to Judge Lee's question is yes, sometimes it can. Of course. I'm sorry. I did not account for prior work. It's just, in this case, there wasn't one. The prior work was different. All the 13 sequences that came in on judicial notice dealt with a completely different concept. Here, those words were taken and arranged differently in the sequence that delivered a new message. And that is the difference. Does the Iqbal Twombly plausibility standard affect the case law here? Because I know the case you cite, Dessendorf, is a 1938 case. Can a judge, a court, say, you know, I know you're saying it's a factual issue on originality. Can a judge say, well, you know, I don't find it plausible based on the record before the court of similar songs with similar lyrics? Dessendorf is a 1938 case, but this court has held that originality is a factual question independently of Desserdorf. Justice Horowitz's decision in, I mean, the decision he participated in, in DirectX LLC, announces the same rule. But the fact that something is a factual matter doesn't mean it can't be disposed of before trial. It can be. There has to be a dispute, and it has to be plausible as Judge Lisa. It cannot be disposed of as a matter of law. If it's a factual issue, we have to be allowed to take discovery. We have to be allowed to bring experts. We have to be allowed to have our day in court, so to say, not to be dismissed as a matter of law on a subjective assessment of creativity. There's longstanding precedent saying that judges should not substitute their aesthetics for, you know, for the jury. You have to let the question go to a fact finder. And I would take it you would agree that summary judgment is, I'm not saying summary judgment is appropriate in this case, but you would agree that while motion to dismiss may not be appropriate, summary judgment may be appropriate in certain cases. And if a party wants to get to the end of it quickly, they can file a motion for summary judgment very, quickly if they wanted to, and ask the court for limited discovery on that. There's a wealth of authority in this circuit that summary judgment is appropriate on the issue, and your partial dissent in Rentmeester said that even in that case, you wouldn't even grant summary judgment let alone give it on the pleadings. But in this case, we should have been able to at least proceed to summary judgment. This was too early. What the judge did, looked at the lyrics without any training, without any history in hip-hop culture, without any training in, you know, lyrical sequences or combinations, and she said, I don't think this is enough. I don't think this is creative. What does a trained jurist know about creativity? What does a trained jurist know? Judge Owens is very creative. I'm sorry? I do think that the issue of whether something is sufficiently creative, sufficiently original, keeping in mind that very little originality is even required. It doesn't need to be novel. It has to be a slight amount of creativity. And apparently, Billboard 100 concluded that my client's song does have that slight amount of creativity. I'd like to move on. You wanted to save some time for rebuttal. You can certainly move on, but I wanted to remind you. I do want to save some time. Thank you for reminding me. Thank you. Mr. Anderson. Thank you, Judge Horowitz, and may it please your honors. My name is Peter Anderson, and I represent the defendants. I'd like to start by answering Judge Lee's question. Iqbal and Twombly apply for two reasons. One, it has to be a plausible claim, and two, you can't do discovery if you don't have a plausible claim. Now, plaintiffs rely heavily on the argument that lyrics are to be judged as a literary work. That doesn't look good because it invokes Shaw versus Lyndon, which they cite. It invokes funky films. It invokes the Last Samurai case, Benet. And I think it's important to start by saying how different the songs are. They tell different stories. If we look at this as a literary work, the player is going to play the verses where the story is told. It's a woman talking to her boyfriend and saying, I don't care what other people are saying about you, and telling us to break up. Did Judge Fitzgerald deal with that claim? I've read his order a number of times, and it seems to me an order limited to whether or not these phrases were original. Assume for a moment, as I asked your friend to do, that he was right based on the previous published matters. Doesn't he still have to at least do some analysis? You make a good argument, but doesn't the district judge have to do some analysis of the composition and arrangement? That's been a perplexing aspect of Plaintiff's position on appeal, is this is a de novo review. It really doesn't matter how Judge Fitzgerald got to where he got, but did he get there? Did he get to the right result? And he clearly did. No, we could also go back to him and say, you did half the job. Go do the other half. We don't do this in the first instance. That's your job. Well, what he faced was, and what he did deal with, was that players playing, runners running, dancers dancing are truisms. You can't, that's not protected. That doesn't require any creativity. What Plaintiffs allege actually- Was that your position? Let's assume the 13 admitted items were not there. Is it your position? Yes, Your Honor, for the following reasons. The Plaintiff alleges it. They allege that there is extensive use of players and haters. They allege, rather than what counsel said, I believe it's page 25 of the second volume of the excerpts where their complaint is, paragraphs 20 and on, they allege it's the combination. They don't claim in their pleading and in their opening brief and in the reply brief, they don't claim what they've claimed today, suggested today, that there may be a compositional copyright protection in players going to play, those words alone, and haters going to hate. What they've always alleged, and what they allege in their complaint and their briefs, is that they're the first to combine those. They acknowledge that players playing is a truism and unprotected. That's what Judge Fitzgerald noted when he dismissed the case. I'd like to go back, because I do think it's important. Shake It Off, I just read from the lyrics, which were in the record, that players going to play deals with a woman telling her boyfriend, don't worry about what other people are saying. I know my friends are trying to interfere with our relationship. Shake It Off is, I stay out too late, got nothing in my brain. That's what people say, that's what people say. I go on too many dates, but I can't make them stay. At least that's what people say, that's what people say. But I keep cruising, can't stop, won't stop moving, it's like I got this music in my mind. Now, this is important. If you're going to say, we come within shot versus one time, we have a literary work, then you get to look at the literary work. There is no similarity in the story. Now, Funky Films and Benet had a basic premise that was the same. In The Last Samurai, it was an American Civil War soldier who goes to Japan, fights with the samurai, et cetera. There was a basic premise in that, there was a basic premise in Funky Films, the Six Feet Under television show case. Here, there's no basic premise that's shared in either of these two literary works, which is what lyrics are. But can a district court at the pleading stage try to figure out what the lyrics mean? I mean, people are always talking about what Taylor Swift songs mean. I mean, can a district court really definitively say this is what Taylor Swift is saying and shake it off? It's English. No one has pointed to any expert testimony that's necessary here. They didn't argue it below. They just say expert testimony, but they don't point. And the case law of this court requires that you point to expert testimony that's going to help. This is English. And what this court has said since Christensen in 1945, I believe, if the works are in front of the court, you can compare them. Now, the only thing that is similar is the portion of the course and the use of the phrases, player's going to play and hater's going to hate. However, it's not a factual issue. It's a legal issue. You can't protect short phrases, and that's what they're trying to do. Now, it's also of our briefs. They're used very differently. In player's going to play, the whole allegedly infringed portion is player's going to play, hater's going to hate, baller's going to ball, chalker's going to call. That's how they used player's playing and hater's hating. Ms. Swift has, because the player's going to play, play, play, play, play, and the hater's going to shake, shake, shake, shake, shake it off, shake it off. Heartbreaker's going to break, break, break, break, and the faker's going to fake, fake, fake. Now, they try to say this is a four-point similarity, but heartbreakers are not ballers. Shotcallers are not fakers. These are different words. There are no similarities there. There have to be concrete similarities, and what they're relying on are abstractions. They're ignoring the differences, and I'd also like to point, they say, well, you just repeat. She used them differently because they just repeat. That's a very important rhetorical device. There's a big difference between row your boat and row, row, row your boat. Those are different things. Player's going to, they're going to play, and because the player's going to play, play, play, play, play are completely different uses of public domain material. This is exactly the core of creativity, and if the court were to say, well, you've got to go through some re-judgment. You've got to go through depositions. Well, you don't have to go through everything. As Judge Owens pointed out, a court might enter an order for very limited discovery, but what's unusual about this case, I guess you've seen it before, but I haven't, is a judge dismissing it at the 12B6 stage. It's not a, you know, it's not the strength of the other side's case. You may well win this case most of the time or all the time if you try it. The problem that I see is it's occurring at the 12B6 stage, and so if you can help us with that, that would be useful. This case is unique, and it's unique because they don't claim similarity in music. Under this court's cases, people pick and choose little musical things and say, well, it not only has these words, but it also has this. It has tritones, or it has some other element. It has a certain rhythm. People combine the bits and pieces of lyrics with bits and pieces of music. That's why I asked the thin protection question before, because for words, we've often said, and other courts have often said, if it can be, if thought can be expressed in many ways with words, we only give thin protection to it. The fact that those words occur in a song, but we're not dealing with the accompanying music, would suggest to me it only got thin protection. Yeah, and so part of it is that they didn't plead any similarity in music, and part of it is that they allege it's not the constituent parts, it's the combination of the two. Now, I'd like to mention one thing. They say that on literary works, this court has never said that there has to be a numerous number of elements to make a selection and arrangement. They cite the case, Metcalf versus Bochco, where Judge Kuczynski said, look, you know, the plots aren't the same, nothing's the same, but it's got this list of, I think it's 25 similarities, and that made a selection and arrangement claim. That's a requirement of numerosity in a literary work to establish a selection and arrangement claim. Here, they've only got, because heartbreakers and shot callers aren't the same thing, they're not the same words, and they don't have the same meanings, here they've only got player's gonna play and hater's gonna hate. How can you organize that? How can you arrange that? Well, you can arrange that hater's gonna hate, player's gonna play, or you can do what Liz Swift did, which is add a whole bunch of repetition and a different whole line of lyrics there. She did it completely different, but if you're just talking about how, you know, the creativity in arranging two public domain truisms, player's play and hater's hate, I only see two alternatives, one goes first or the other goes first. That's a thin copyright protection, because there's no real ability to do anything different. Yeah, the trouble with the thin copyright protection argument is that they would at least be allowed to try to prove actual copying. Well, your honor- See, this is the motion to dismiss stage, and that's what's, so I don't think we can rely on the fact that the protection is only thin at the motion to dismiss stage. We did at Rentmeister, and I think there's two separate questions here. One is, let's, you know, copying is not an issue at this point, whether copying is a historical fact that occurred is not an issue. What the issue is, is whether the alleged copying is a protected expression. The alleged copying is the decision, an idea, of combining player's playing with hater's hating, and doing it in a different way. That's the alleged copying, and as a matter of law, that is not, at the pleading level, that's not a plausible allegation of copying protected expression. All three panelists on Rentmeister agreed that the logo did not meet that test. There was a dissent by Judge Owens, and Judge Owens, however, noticed, noted when he was talking about the photograph, as I'm sure you recall, that there are differences, but there are similarities. So if I recorded a song today that began, of course the player is going to play, play, play, play, and the hater's going to hate, hate, hate, would Ms. Swift have a copyright claim against me? If you're talking about identically copying a series of words, we would have a fight with the other side over whether it's short. Well, tell me, you just said, play is they got to play, and hate is they got to hate, are not long enough phrases to get copyright protection. Are your client's phrases long enough to get copyright protection? The lyrics, this whole sequence, absolutely. No, just take the first two, take the first two lines. I don't think anyone else can do that. So what's the number of words? You said six, seven, eight. Eight words is too few, but 14's enough? There's creativity in deciding to repeat, okay? That does not appear in the photograph. No, I'm asking a different question. I'm getting there. I know, I know, but you got to get there quicker. You said before these phrases are too short to obtain copyright protection. You're now saying your client's phrases are long enough. So tell me, what is the minimum length that you believe a phrase has to get copyright protection? I think there is a strong argument that those two lines with the repetition are an unprotected short phrase. I also think that I can make a good faith argument that it has the minimal amount of creativity, because it's not just the public domain statements, player's going to play and hater's going to hate, but it's also the repetition of them in a certain number in which the hypothetical your honor mentioned is identical virtual. Okay, so that's why I asked it. Now let me make it harder for you. What if I take off the last play and the last hate off of each one? I record a song that says, of course the player's going to play, play, play, and the hater's going to hate, hate, hate. So I leave off the last play and the last hate. Is that a protectable phrase? You know, this reminds me of Learned Hand, where he said that you can never know. You've got a series of levels, and at some point... To be reminded of... Any time that anything I ask reminds you of Learned Hand, I'm flattered. But I still need to know what your position is. There is a point. We've got two extremes, where it's identical copying of this exact number of repetitions, and we've got the plaintiff's work where there's no repetition at all. But I think no repetition at all means it's not protected. I think there's an argument with this number of repetitions, it is protected. I cannot draw a clear line on where that flips, just like Learned Hand could. Although I don't take, you know, credit for learning. The other thing I would just like to mention in my last waning seconds... Nehru decides this. If there's no protection as a matter of law, and river wound its way between muddy banks crawling with alligators, I don't see how this court can say, or criticize Judge Fitzgerald for saying there's no protection, and players are going to play, haters are going to hate. The reply at pages 16 to 17, the reply brief, abstracts this to an incredible degree, to say we've got like 18 different similarities. There's a girl singing, you know. Those are abstractions. This court in Metcalfe, in Three Boys, required concrete similarities. Heartbreakers is not a concrete similarity with ballers and shot callers. And I see my time is winding down. Thank you. Thank you. Thank you, Your Honor. Your Honor, I wanted to address the thin protection standard. In our reply brief, we do list at least nine creative choices that were made in putting together the sequence. All of those choices... But if you got thin protection, we would be past the motion to dismiss stage, right? If you were entitled to thin protection... I'm hoping we would be past the motion to dismiss stage. So focus on why you get past the motion to dismiss stage. Addressing the implausibility standard. First of all, it doesn't are dealt with whether or not you can decide a factual question. One formally dealt with whether looking at the complaint, the claim is plausible. There is nothing implausible looking at the complaint. There's nothing implausible about a four-part lyrical sequence being creative enough, having the slight amount of creativity that the Supreme Court requires. And addressing the argument that we do not have a compositional claim. Yes, we do. It's stated in paragraph 43 of the complaint. Now, addressing the two different messages. The message is the same. My client's son deals with the Aryan's relationship with her boyfriend. And Shake It Off is about life after the jail. But both songs are about staying your own course and not being bothered by what others do. And this is what makes their cases different. All their cases deal with different messages. And by the way, there is case law that we cited that trivial differences that they list. First of all, factual question, whether they are trivial or substantial. And second of all, trivial differences cannot defeat virtual identity. Virtual identity does not actually mean virtual. There could be trivial differences. But can we get back to the phrases for a second? Not the idea, not the arrangement of them. But the four phrases. Players, they're going to play. Haters, they're going to hate. Et cetera, et cetera. Why are those protectable? As lyrics. Just as words. Because there's actually the rule that they proclaim that short phrases cannot by themselves be protected. That's not true. We cited cases where one word was protected, repeated four times. We cited cases where one letter was protected, repeated certain times. They hang their creativity on repetition alone. That's only one element. We listed at least nine creative elements. And that's just me looking at the lyrics. Who knows how many creative choices an expert will find back, placing himself in 2001 and looking at the culture and the factual setting. This is a factual matter that is screaming for discovery. The defendant's counsel in their brief cite a 2000 song by R. Kelly, and the lyrics include players want to play, ballers want to ball, rollers want to roll. I don't want to surmise what R. Kelly meant by those words, especially given the title of the song, which I'm not going to repeat that. But this has players want to play, which the 3LW song has. It has ballers, which the 3LW songs have. It has rollers instead of shock collars. Would R. Kelly have a plausible claim against your client on a copyright claim that would survive? Motion to dismiss. Your Honor, we cited a judicial determination that our clients were the first to combine players going to play, haters going to hate. It's in the papers. So it has been judicially determined that we preceded R. Kelly. So maybe we have a claim against R. Kelly. I'm not sure. I'm going to explore that. But what I do want to leave you with. If you've answered Judge Lee's question, you've left us. Your time has expired. Oh, thank you so much. Thank you.
judges: Hurwitz, Owens, Lee